Good morning, Your Honor. Henry Egghart for appellant of Frankie Malarius from Reno, Nevada, and I would like to reserve a portion of my time for rebuttal, if I may. Watch your time, because you can decide how much of your 15 minutes you want to use now. I see. Very well. I want to start off just getting into the heart of this case. Mrs. Malarius worked in a call center that serviced adult websites. There were various instances that arose, and she decided to file a charge of discrimination with the Nevada Equal Rights Commission. She faxed her employer a copy of the appointment as a way of letting the employer know of this time off requirement, because she wanted proof that she had notified the employer, rather than by keeping a copy of the fax. On previous occasions for medical appointments, she had just given the notice from the doctor, rather than using the time off form. Now, she went and did her appointment with the Equal Rights Commission, and in fact, on that date, together with the investigator, a charge was prepared and filed against the employer. And when she returned, she was met by her supervisor and asked what had happened there, and she'd asked to fill out a form for the time off, and that part is in accordance with the fax. And she said, oh, I'm already off the clock. I'll fill it out next workday. Of course, that wasn't really the best answer, but I don't think that particular little fact is enough to sink Mrs. Malarius' case. But immediately upon that, those events, she was terminated. Now, the district court, obviously as we're here, found that, decided that Mrs. Malarius had not rebutted employers' offered business reasons for terminating her. And at the time of her termination, the reason given was that she had violated the time off policy. Now, Wasn't there also a statement that she yelled at the supervisor, Coleman, and had caused disturbances on the floor and in Coleman's office? Well, they went back to her employment file, and they dragged out all of the bad entries against her, and then they used those to justify her termination. But at the time, that was not discussed. It was only the visit to the Equal Rights Commission and her not signing up for that. Now, the district court quoted the official policy of the employer, but that policy was not always followed. In previous instances, she just gave the doctor's notes to her employer, and the supervisor testified at our deposition that the policy was inconsistently applied and was not applied in all cases. So the standard is that the good faith reason and the sites are there. The employer has to, the employee, rather, has to give a reason to rebut the employer's proffered reason and to show that it's inconsistent. Now, I would submit that saying that when you're fired because of the time off policy not being followed and there's evidence that the time off policy is inconsistently applied and not applied in all cases, that is rebutting that proffered reason for the termination. Because ‑‑ Well, you know, can I just kind of unpack that a little bit? Yes, please. Because it seems like we have two different ‑‑ we're talking about whether this policy is applied. If there's planned time off, it seems you're supposed to, you know, give notice and ask. But I thought that the supervisor was also talking about sometimes you don't know and it's an emergency and, therefore, you wouldn't require the same kind of documentation. So is ‑‑ Well ‑‑ Maybe that's the testimony I had looked at. But maybe there's other testimony that you're hanging your hat on on inconsistent application. And if you could point me to that, it would be helpful. Yes, I can. And what happens, of course, is that after the employer went to rehabilitate that testimony by what you just stated, okay, if you go to the excerpt at page P343. The excerpt is where? The excerpt, 343, plaintiff's ‑‑ it's marked P343. Okay. And that's in the second volume. On page 51 of the deposition, it says, starting line 15, was there, if an employee had to go to the doctor, let's say, take a couple of hours off, was there a procedure for that? Fill out a time off request and get permission. And my question is, was that always done? And the employer said, the supervisor said, in most cases. Not in all cases, in most cases. And going forward to page P345, the question earlier, to the supervisor, earlier you stated that it had been accepted for people to let you know after the fact about time off. Is that true? And she said, yes, it was. And if you look at the actual form that was used for time off, it states days off. It doesn't say time off. And that's at P47. It says shift days off, new days off. So this policy was not ‑‑ I mean, there's always, in most employers, there's the stated written policy and then there's what's actually done. Now, if this policy, this was applied inconsistently, in other words, other people were not fired for violating the policy, and Ms. Malarius was fired for violating the policy in order to make her charge, then that's retaliation. And that's ‑‑ When I look in the deposition testimony, I don't have the ER in front of me. I just have, you know, my note. But it suggests that those statements you read were in the context of saying, but that's because if somebody has to leave on an emergency, as long as they fill out a form after the fact, that's acceptable. But in this case, Ms. Malarius did not do so. So I didn't see, when I read it, based on my notes, I didn't see that as being an inconsistency. Yes, you don't always have to do it in advance, but in those cases when you don't do it in advance, you have to do it afterwards, and it doesn't seem to be a dispute that she didn't do so. Well, that was when the, you know, the Employer's Council rehabilitated the witness's testimony by getting her to say that this was a policy for emergencies. But as a matter of fact, it wasn't always done. But you don't have any evidence. In other words, he makes a statement, it's clarified, and then that's where the record sits. You don't have a statement that says, well, let's take a look at that. Let's talk about non-emergency situations and whether it's followed, and can you say that it's followed in every instance, and do you, in fact, have a piece of paper in your file? We don't have any of that. Right. Well, we have to work with what's here. But I would submit that her testifying that it was not always followed, and she didn't testify that it was always followed except for emergency situations. She said it was not always followed. And then what she said is, in emergency situations, we'll allow it. But she never said only in emergency situations we'll allow it. She testified that the policy was not always followed. In other words, that, you know, this is a written policy, but it's not a 100% thing or 99% thing. It's not always followed. And I submit that in the context of this case where Ms. Molares was fired on her return from the Medical Rights Commission, that is enough to raise an issue of fact as to whether retaliation played any role or any significant role in the decision to terminate her or a mixed motives jurisdiction. And I think that the plaintiff can use the same evidence for establishing a prima facie case and for rebutting the proffered reason. In this case, the timing is so egregious that I think it has a lot of weight and that there is definitely an issue of fact that's not resolved as to whether retaliation played a role in the decision to terminate Ms. Molares. MS. MOLARES. Can you also address the exhaustion of administrative remedies issue? I'm sort of having trouble understanding how the ‑‑ what I saw the language in her charge, which was retaliation for asking for accommodations, was reasonably related to a claim of retaliation for meeting with the NERC. I mean, the BKB, the Maui Police Department case, they say at least one of the main purposes of the rule was to give the respondent notice, the employer notice, of what the charges were. So how did her charge, which is limited to accommodation issue, give the appropriate notice to the employer? MR. WELLS. Well, the district court found ‑‑ MS. MOLARES. I understand what the district court found, but that was like a series of speculations and inferences. I mean, it was like there was like 12 steps to try to get there. Is that what you're relying on, the district court's sort of stringing together those inferences? MR. WELLS. Well, I mean, first to answer your question, I think that everyone knew at that point that retaliation was an issue on the table, and it was certainly briefed and argued in the district court, notwithstanding the charge. These charges are drafted by an investigator together with a client, and then unfortunately they're not always ideal. My understanding is that unless the other side files a counterappeal, the issues are limited to what's raised in the appellant brief. But, yes, it's less than ideal, but in line with what the district court said, because it brings up the issue of retaliation, and because that issue was briefed by both sides in the district court, and it was in the summary judgment motions, or I should say briefed in the motions, then it's properly before the court. MS. HEUMANN. But I think the district court misspoke and said something like it was retaliation for making a charge with the NARC. And, in fact, of course, she did that after she was already terminated. So that couldn't have been the basis for the retaliation. It would have had to have been the meeting. And she never went back and filed another charge of retaliation for the NARC. MR. WELLS. No. Unfortunately, that was not done. And, obviously, the charge was filed before she was terminated. But I would submit, in addition to what the district court said, that the issue was tried by consent or addressed by consent, because it was briefed and argued and addressed both in the administrative proceedings and in the district court. MS. HEUMANN. The defendant didn't preserve that? Because I believe they argue it on appeal. Are you saying they didn't preserve that argument before the district court? MR. WELLS. I don't recall. I'd have to check the briefs. I think they may have addressed it in district court, but it was also argued in the administrative proceedings. And I would submit that the district court's decision in that regard should stand under the facts of this case. MS. HEUMANN. Did you want to reserve time for rebuttal? MR. WELLS. Yes. Thank you for reminding me. MR. HALL. Good morning, Your Honors. May it please the Court. My name is Anthony Hall, and I am appearing on behalf of the appellee, the defendant at the lower court level at Northwest Nevada Telco. I'd like to begin by sorting this case into, I think, two big categories in order to do the analysis. The first category we have to look at is the nature of the arguments made on appeal by the appellant and whether or not those arguments were raised at the district court level. And the resulting analysis is, are they properly before this court? And that deals with the two issues that they have appealed. And the two issues that they've appealed are the retaliation and, specifically, the only issue they've raised on appeal is that they are alleging that they presented sufficient evidence of circumstantial evidence to rebut the legitimate reason given. In other words, they've only argued the pretext. The second argument on appeal is the 300 days. There are additional arguments that, as Your Honor's question correctly pointed out, we have preserved correctly, and our appeals of the district court's error are properly before this court as well, and I will address those if there's time at the end. The second part of this analysis is the analysis of substantively. If this Court decides to accept these new arguments and look at them, then we need to address those issues at that point. And even there, this Court should sustain the district court's decision for a number of reasons, and I'll walk through those. Let's start with the argument that was made to the district court regarding pretext. Specifically, this is a very important point because the district court's obligation is not to ferret through the entire record and find some fact that could potentially support it. It is the plaintiff's burden, when they are opposing a motion for summary judgment, to present that evidence to the district court. And in this particular case, the appellant gave a five-page opening statement of facts without a single citation to any evidence. Not a single cite. When they finally get to the point on the final page of their brief, they make a one-sentence argument about pretext. That one-sentence argument effectively says it's inconsistent. And the one piece of evidence they cite is the deposition testimony of Ms. Coleman, where Ms. Coleman, as this Court has already correctly noted, specifically says that we do make an exception for emergencies. And I will read the complete statement she makes because I think it's very important. Was this always done in most cases? There was an objection. And then she said if it wasn't done and it was an emergency, because life could be that way, then when the person came back, then all they had to do was fill out a note. She consistently says you always had to do a note. That's what the policies say. And that was the testimony that was presented to the district court. Now, that's an important element because using Your Honor's phrase, we need to unpack their argument. And I would suggest a way to unpack that by looking at two critical questions. The first is how is it inconsistent with the reason given by the employer? You can't simply say, hey, it's inconsistent. There's lots of reasons that are legitimate that can be inconsistent. We can make an exception to a rule to accommodate somebody's disability, and I would have an inconsistent application because of a disability which is legitimate. That doesn't show pretext. You've got to show how it's inconsistent in a way that rebuts the reason given by the employer. This case did not do that. The reason for the inconsistency was for emergencies. This case certainly did not present an emergency. Kagan. Are you saying that they didn't argue the point about, you know, yelling or getting upset previously as a basis for pretext because it hadn't been brought to her attention? That wasn't one of their bases for saying there was pretext? I'm not sure I understood the question. Which point? Well, I think, you know, the reasons given, justification seemed to me to be yelling was insubordination and didn't follow this paper procedure. Did they argue the insubordination as trying to rebut that as a basis for pretext? No, Your Honor. They didn't raise that at all. In fact, they still failed to address that. When I got to the issue of substantively, even if we're going to consider this, substantively, that issue remains unrebutted. And when Ms. Coleman explained why she terminated him, Mr. Egghart specifically asked, well, what do you mean she didn't follow procedure? Her very next answer, about eight lines down, is to say, what I mean is she refused to fill it out even after she came back. So we had an insubordination element combined with a failure to follow the policy. And they have still yet to address that at the district court level. Even now, they haven't addressed that issue. But they didn't address it then. So looking at that underlying issue, there are also two important points when we're unpacking this analysis, is how is it inconsistent, which I just explained. The other question is what is the evidence of the inconsistency? The only evidence presented to the district court was Ms. Coleman's testimony in that very limited section. That's it. There was no other evidence presented. An important side note on that, which is going to be important when we look at the new arguments, is that argument admits that they had a policy and that the policy required you to file and fill a note out and get permission before you left, except for the case of emergencies. That's a very important point, especially when we turn to the next part. When we look at the opening brief before this Court now, the argument is, I was never personally required to fill out forms before I took time off. So when they say inconsistent, they're still using the same word, inconsistent. But when we ask the question, how is it inconsistent, it is a completely new argument that was never presented to the district court. How is it inconsistent? The answer now is, well, it's inconsistent because I was never required to fill the forms out, not it's inconsistent because they make an exception for emergencies. And hers was obviously not emergency. She knew about it. She refused to even tell them about it the entire day Friday. Then she waited until after work on Friday to fax it to them. So hers was clearly not an emergency situation. It was an application of a pair. So we have a completely new information, excuse me, a completely substantively new argument that's under the word inconsistent. The evidence of this is also completely new to the Court. The evidence supporting that is her deposition citation, which was never cited to the district court. It is a single line in a 250-page deposition that was never raised until we get to the opening brief before this Court. As the district court correctly noted, it is not their obligation to ferret through the deposition in order to find any possible fact that would support their case. That was the plaintiff's obligation to present it at that time. And in this case, that clearly is prejudicial to us. Had they made that argument, we would have pointed out a number of things. We would have pointed out Ms. Coleman's testimony about her specific language, about this is how it is applied and she's been required. I would have also expanded it to cite examples from her deposition and from her court record, excuse me, from her personnel record, where she filled out forms. Now, unfortunately, these aren't before the Court because this never happened at the lower court level where they raised this argument. She filled one out on July 6th, 2001. Was that before the district court? What was that? Was that before the district court? No. This was not because this was never. Yeah. And that's the argument for prejudice. Now, I'll flip this on its head. It's not our obligation to show that we would be prejudiced. It's their obligation to show that we would not be. And they have made no attempt to even make that showing in this case. Then we move to the reply brief. And we get a brand-new argument for inconsistency. The new argument in the reply brief for the very first time is that they're citing an argument by looking at the policy and saying the policy says that, yeah, we now admit in the reply brief that you do have to fill out forms and you do have to give notice, but you have to do it three times. You have to violate that three times before you're going to be fired. So we have a completely new argument for the first time in the reply brief that we've never had a chance to respond to. And it was absolutely never raised to the district court before. Now, in particular, again, a document that was raised to the district court and I think is very important for this particular case is the very next document, which is 204-3. It's a clarification of the policy they cite. The policy they cite is one from 2001, and the very next page is the new one from November 30, 2004. That's a very critical point in this case because just before that, in the beginning of November, Northwest Nevada Telco was really busy and they had submitted a memo to all employees saying, look, you're going to have to work overtime. Everybody's required to work overtime. A few weeks later, they issue a new policy regarding time off requests, and it's time off requests all time. It's not full day. It's not part day. It's all time off on November 30, 2004, and they specifically say, even if you give us 72 hours' notice, we may not approve it depending upon the situation, specifically indicating that the policy is being applied a little bit differently because of how busy they are. That's November 30, 2004. The date she leaves is December 3rd, excuse me, December 6, 2004. So she just completely ignores the new policy that's put in front of them. Again, this is in the record before the Court, but this wasn't argued because their argument was new and presented for the first time in the reply brief. Turning to the argument about 300 days. The 300 days issue was another example of this. In the argument to the district court, the argument was a, essentially it was two sentences that said, this is a continuing request because she made it while she was employed. Therefore, it should be considered to be a continuing request until she leaves. That was the entire argument before the district court. We, of course, responded, and the district court, I think, correctly found that this was a discreet act. The refusal to give, or the alleged refusal to give an accommodation was a discreet act that occurred two years and nine months before she filed a charge, clearly outside the 300 days. So the Court, I think, correctly found that. Now, the Court went beyond what its obligations are. The Court actually turned to the issue of hostile environment. Could she have stated a hostile environment claim? Now, that's going beyond what the plaintiff even did. The plaintiff never tried to make that statement in its opposition. And in doing so, the Court said, look, we only have two issues here. One is an alleged denial of a chair back in early 2002, March 2002, which was never brought up again. Never brought up, never mentioned. Nothing happened regarding the chair for the next two years and nine months. But she was told she was going to be fired if she asked about the chair again. And, you know, how can we expect her to continue asking for it? Your Honor, we don't have to expect her to continue to ask. What we have to do is we have to expect her to file the charge and use her administrative remedies. That's what those are for. And she would have been protected from retaliation had she followed what the law requires her to do. She had 300 days to bring that discreet act to the Nevada Equal Rights Commission or the EEOC and file a charge. She never did that. And I would take your question one step further. The Supreme Court case that addresses this issue specifically gave us some instructions on how to determine if we're dealing with a discreet act versus a hostile environment. And the way you measure that is you look at determining when did the alleged violation of the law occur. And in this case, the district court was correct in its analysis when it said the violation occurred on the day they denied the accommodation. So we are dealing with that. I would bring up one other additional point to Your Honor's question. There has been no appeal of an alleged retaliation claim coming out of the alleged threat back in 2002. We don't have that on the record, nor is it part of the case. The only part of the case that they've appealed is the failure to accommodate that allegedly came when they denied it, not about the threat. So we don't have that second part before us now as well. So I think there's a number of reasons why that claim should be rejected. That, Your Honors, I believe sums up procedurally why those are not proper claims in front of us now. I think we can turn quickly, substantively, and I'd like to make a quick point before my time runs out, and that's regarding the issue of these particular claims, specifically the retaliation claim. The whole argument about the form, about how it was done, is, quite frankly, irrelevant if we're going to look at the whole, excuse me, if we're going to look at establishing pretext by circumstantial evidence. And what I mean by that is the undisputed testimony clearly says that when Coleman saw her walking down the stairs, she didn't know about the NERC appointment. She said to her, where are you going? Ms. Coleman responded, you've been faxed, and marked past her. On her way past, she said, well, make sure you fill out a form. In other words, before she knew about the alleged protected conduct, she had requested that a form be filled out. She had given a direct instruction. Further, they put a note on her desk before they knew telling her to fill it out. So even if there is some issue about what the policies and procedures were, they made a direct request to her, not once, but twice, before they knew the substance of what that charge was about. And as a result, there is no ability to establish pretext, even if we decide to look at the new arguments that have been made here on appeal. Thank you, Your Honors. Thank you. Do we have a little bit of time for rebuttal? Thank you, Your Honor. Yeah, just briefly. As far as the ‑‑ I would agree with your statement about a hostile environment. She eventually gave up asking for her chair, although she wanted it all the time. Now, as far as ‑‑ She didn't file any claim on that. No, she did not. Yes. That's kind of one of the unfortunate fatal things to that claim, isn't it? Yes, I understand that. I just wanted to address it since it was mentioned. Now, as far as the termination goes, the actual decision to terminate her was not made until after she returned to work. So the question is, if she had gone ‑‑ everything else would have been the same, but she had gone to the doctor or gone to play golf or whatever, would she have been terminated? And that is a question of fact that is not resolved. I would submit that in the context of this case, she has raised significant circumstantial evidence of retaliation to raise an issue of fact regarding whether that was a factor. Not the factor, but a factor in her termination. And yes, she was investigated about various things and written up, as many employees are. But the actual decision to terminate her was made on her return to work. And like I said, she actually gave notice three days previous to her going to the Equal Rights Fund. On December 3rd, I think it was, she sent the facts. And that's in the record. And now apparently her particular supervisor did not receive that. But the employer got notice of it. And she did learn about it eventually on that day. So Ms. Malarius considered that to be ‑‑ she used the Equal Rights Commission form as notice. And sometimes the Equal Rights Commission people tell you now they can't retaliate against you, so sometimes employees get a little bit too cocky. But that doesn't ‑‑ I don't think in this case her failure to write up the form when she came back should sink her whole case because there is substantial evidence, or there's an inference of retaliation as a part of the determination to terminate her. Thank you. Thank you. The case just started of Malarius v. Northrop.
judges: McKeown, Ikuta, Selna